1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JON J. SPROUT, | ) | 1:09-cv-01676 SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**BACKGROUND**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Title II and XVI of the Social Security Act. 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

_____

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 9.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

# FACTUAL BACKGROUND

Plaintiff was born in 1950 and previously worked as a tax preparer, telemarketer, estimator, and project manager.  (Administrative Record ("AR") 19, 20-23.)  Plaintiff began to receive treatment in September 2003 for symptoms of eye irritation, tearing, blurry vision, and drooping eye lids. (AR 146-173.)

On October 30, 2003, Reginald Sampson, M.D., performed a surgical ectropian[2] repair of the Plaintiff's lower eyelids. (AR 172.)  Similar procedures were performed by Dr. Sampson on January 15, 2004, March 4, 2004, and July 29, 2004. (AR 163, 161, 149.)

Plaintiff stopped working on November 1, 2004, because the company he worked for, H & R Block, stopped putting him on the schedule.  (AR 20, 22.)  Plaintiff believed that the change in schedule was due to the fact that his eye condition made him slow at processing tax returns.  (AR 22.)

On February 10, 2006, Plaintiff filed an application for DIB and SSI, alleging disability beginning on November 1, 2004, due to elbow, leg, and eye problems.  (AR 106.)

On July 17, 2006, Emanuel Dozier, M.D., a state agency consultative examiner specializing in internal medicine, performed a consultative evaluation.  (AR 176.)  Dr. Dozier opined that Plaintiff could (1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) stand, walk and sit 6 hours each in an 8-hour workday; (3) perform occasional pushing and pulling, climbing ladders, ropes and scaffolds, kneeling, crouching, fingering, grasping and fine manipulation with the non-dominant left upper extremity.  (AR 179.)  Dr. Dozier did not include any visual limitations in his functional assessment, but noted Plaintiff's constant tearing.  (AR 179.)

On August 1, 2006, S.N. Grossman, M.D., a state agency, non-examining physician, assessed Plaintiff's physical residual functional capacity ("RFC").[3]  (AR 181.)  He came to the same

---

[2] Ectropian refers to the eversion of the eyelid. *Dorland's Illustrated Medical Dictionary,* 599 (31st ed. 2007).

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"

conclusions as Dr. Dozier regarding Plaintiff's exertional limitations and concluded Plaintiff had unlimited near acuity, far acuity, depth perception, accommodation, color vision, and field of vision. (AR 181-83.)  He made no mention of Plaintiff's tearing and concluded that Plaintiff's reported symptoms were disproportionate to the expected severity and duration of his impairment. (AR 185.)

On September 27, 2006, Dr. Gary Williams, an optometrist, evaluated Plaintiff and noted 20/20 corrected vision and grade 4 ectropian. (AR 238.) Dr. Williams opined that additional surgery would not likely correct the deformity in Plaintiff's eye lids and, due to that permanent condition, Plaintiff was unable to perform gainful employment.  (AR 238.)

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, on April 20, 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 43-50, 51-56, 70.)

On June 6, 2007, Roger Kohn, M.D., performed surgery on Plaintiff's eyelids. (AR 381-82.) Thereafter, Dr. Kohn performed two additional surgeries, one on October 3, 2007, and the other approximately two weeks before the hearing.  (AR 25-26.)

On September 29, 2008, ALJ James P. Berry held a hearing in which Plaintiff testified to his functional limitations.  (AR 19-37.)  He testified that he was able to perform small chores at the center where he lives.  (AR 29.)  Although he has a driver's license, he felt uncomfortable driving because of his eye condition.  (AR 30.)  Plaintiff claimed that he had problems looking at a computer screen for even brief periods of time and that, when looking at the computer screen, or being outside, his eyes would water and his vision would become blurry.  (AR 22, 32-33.)  Plaintiff stated that he was still able to read books, which he did in short intervals for long periods of the day.  (AR 33.) He testified that his eye condition is not painful and does not interfere with his ability to sleep.  (AR 32-33.)

Kenneth Farrah, a vocational expert, testified that Plaintiff's past work as a tax preparer and a telemarketer was sedentary and semi-skilled.  (AR 37.)  Plaintiff's past work as an estimator was

---

*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

sedentary and skilled. (AR 37.) His past work as a project manager was considered to be light[4] and skilled. (AR 37-38.) Mr. Farrah concluded that a hypothetical person of the same age, education, and work experience as Plaintiff, could perform all of Plaintiff's past relevant work, if that person had a combination of severe impairments leaving him with the RFC to (1) lift and carry 20 pounds occasionally and ten pounds frequently, (2) stand, walk, and sit for six hours each, and (3) occasionally push and pull, climb ropes, ladders, and scaffolds, kneel and crouch, finger, grasp and use fine manipulation with the non-dominant upper left extremity. (AR 38-39.) However, when the limitations of the same hypothetical individual were changed, such that the individual could lift 25-30 pounds, sit eight hours, stand four hours, walk approximately two blocks, and experienced frequent blurry vision which would interfere with the timely completion of tasks, Mr. Farrah did not believe the individual would be able to perform any of Plaintiff's past work. (AR 40.)

On April 30, 2009, the ALJ issued a decision which found Plaintiff not disabled from November 1, 2004, through the date of the decision. (AR 8.) The ALJ summarized Plaintiff's course of treatment for his eye impairment. (AR 10-11.) He then discussed Dr. Williams' opinion that Plaintiff had a permanent condition which would not be assisted by future surgeries and would make Plaintiff unable to perform gainful employment. The ALJ explained that he attributed less weight to Dr. Williams' opinion because "he only examined the claimant one time, which was performed before the claimant had additional surgeries." (AR 11.) The ALJ contrasted Dr. Williams' opinion with that of Dr. Grossman who did not note any eye limitations in his RFC assessment. (AR 11.) The ALJ next summarized Plaintiff's medical complaints and claimed limitations, and concluded that, although the Plaintiff's impairments could cause the symptoms alleged, Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not considered credible to the extent that they were inconsistent with the RFC assessment. (AR 12.) The opinions of Dr. Grossman and Dr. Dozier were given substantial weight

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id.* §§ 404.1567(a), 416.967(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

1  because their opinions were "most constant with the overall objective medical evidence." (AR 13.)

2  Ultimately, the ALJ found that Plaintiff's eye impairment was not severe and did not limit him from

3  engaging in basic work activities. (AR 11.)

4  However, the ALJ did find that Plaintiff had two other severe impairments: arthropathies[5]

5  and epicondylitis.[6] (AR 10.) The ALJ found that, through the date of the decision, Plaintiff (1) had

6  not engaged in substantial, gainful activity from the alleged onset date of November 1, 2004; (2) had

7  an impairment or a combination of impairments that is considered "severe" based on the

8  requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of

9  impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P,

10  Appendix 1; and (4) could perform his past relevant work as a tax preparer, telemarketer, estimator,

11  and project manager. (AR 10-14.)

12  Plaintiff sought review of this decision before the Appeals Council. (AR 4.) On July 25,

13  2009, the Appeals Council denied review. (AR 1-3.) Therefore, the ALJ's decision became the final

14  decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

15  On May 4, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's

16  decision. Plaintiff contends that the ALJ erred in determining the severity of his eye impairment,

17  and that the ALJ's decision is not supported by substantial evidence because he impermissibly

18  discredited Dr. Williams' opinion.

19  **SCOPE OF REVIEW**

20  The ALJ's decision denying benefits "will be disturbed only if that decision is not supported

21  by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

22  1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

23  of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must

24  determine whether the Commissioner applied the proper legal standards and whether substantial

25

26  _____

27  [5] Arthropathy is a general term meaning "any joint disease." *Dorland's, supra* note 2 at 159.

28  [6] Also known as tennis elbow, epicondylitis is a condition causing inflamation of the tissues connected to the humerus in the arm. *Id.* at 637.

evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the

1   requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.*

2   §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant

3   has sufficient RFC despite the impairment or various limitations to perform his past work. *Id.*

4   §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that

5   the claimant can perform other work that exists in significant numbers in the national economy. *Id.*

6   §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the

7   sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99

8   (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

9   **DISCUSSION**

10  **A.   The ALJ's Evaluation of the Severity of Plaintiff's Eye Impairment**

11       The ALJ found that Plaintiff had two severe impairments: arthropathies and epicondylitis.

12  (AR 10.)  Plaintiff maintains that the ALJ erred in his Second Step finding that Plaintiff's eye

13  impairment is not severe.  Plaintiff argues that, while his corrected visual acuity may be 20/20, it is

14  not his vision, per se, that causes him to be unable to see, but rather the constant tearing he

15  experiences.  Plaintiff argues that his symptom of teariness is clearly documented in the medical

16  record and the fact that multiple surgeries have not cured his condition evidences its severity.

17       **1.     Legal Standard**

18       To satisfy the Second Step's requirement of a severe impairment, the claimant must prove

19  the physical or mental impairment by providing evidence consisting of signs, symptoms, and

20  laboratory findings; the claimants own statement of symptoms alone will not suffice. *See* 20 C.F.R.

21  §§ 404.1508, 416.908.  "An impairment or combination of impairments may be found 'not severe

22  only if the evidence establishes a slight abnormality that has no more than a minimal effect on an

23  individual's ability to work.'"  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  Thus, "'[i]f

24  an adjudicator is unable to determine clearly the effect of an impairment or combination of

25  impairments on the individual's ability to do basic work activities, the sequential evaluation should

26  not end with the not severe evaluation step." *Id.* at 687.  The court noted that "[s]tep two . . . is 'a

27  de minimis screening device [used] to dispose of groundless claims' and an ALJ may find that a

28

7

1  claimant lacks a medically severe impairment or combination of impairments only when his

2  conclusion is 'clearly established by medical evidence.'" *Id.* (citation omitted).

3     **2.   Analysis**

4     In arguing that the ALJ erred at the Second Step by finding Plaintiff's eye impairment

5  nonsevere, Plaintiff misunderstands the function of the Second Step as a gate keeping mechanism

6  to dispose of groundless claims.  Once a claimant prevails at the Second Step, by achieving a finding

7  of some severe impairment, regardless of which condition is found to be severe, the Commissioner

8  proceeds with the sequential evaluation, considering at each step all other alleged impairments and

9  symptoms that may impact the claimant's ability to work.  *See* 42 U.S.C. § 423(d)(2)(B) ("In

10  determining whether an individual's physical or mental impairment or impairments are of a

11  sufficient medical severity that such impairment or impairments could be the basis of eligibility

12  under this section, the Commissioner of Social Security shall consider the combined effect of all of

13  the individual's impairments without regard to whether any such impairment, if considered

14  separately, would be of such severity.").  Here, Plaintiff prevailed at the Second Step.  Therefore,

15  any error in the Second Step was harmless because the ALJ found two severe impairments and

16  continued on with the remaining steps.  *See Lewis v. Astrue*, 498 F.3d 909 (9th Cir. 2007)

17  (concluding that the ALJ's classification of one of claimant's impairments as nonsevere at the

18  Second Step was harmless error, because claimant was found to have other severe impairments, and

19  the ALJ extensively discussed claimant's nonsevere impairment symptoms in the Fourth Step);

20  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (recognizing that, if one severe impairment

21  exists, all medically determinable impairments must be considered in the remaining steps of the

22  sequential analysis).  Thus, the question becomes whether the ALJ properly considered the functional

23  limitations of all other medically determinable impairments at the remaining steps.

24     In the Fourth Step, the ALJ was required to account for Plaintiff's nonsevere medically

25  determinable impairment in reference to his ability to perform his past relevant work.  *See id.*  The

26  ALJ found Plaintiff's eye condition to be a medically determinable impairment which could cause

27  him to suffer from the symptoms he alleged.  The ALJ only disagreed with the "intensity, persistence

28  and limiting effects" of the impairment.  (AR 12.)  In determining a claimant's RFC, the ALJ should

1 consider a claimant's ability to meet physical and mental demands, sensory requirements, and other

2 functions. 20 C.F.R. §§ 404.1545 (b)-(d), 416.945 (b)-(d). Plaintiff argues that it is not his vision,

3 but his tearing, which is the alleged cause of his blurry vision. The ALJ stated that he "considered

4 all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with

5 the objective medical evidence." (AR 11.) In his consideration of Plaintiff's eye impairment, the

6 ALJ mentioned Plaintiff's course of treatment, explained that Dr. Sampson had performed three

7 surgeries due to Plaintiff's tearing, and that Dr. Kohn, a specialist in plastic surgery of the eye,

8 performed three additional surgeries for the same problem. He also summarized Plaintiff's

9 testimony regarding the frequency of teariness and its functional limitations on Plaintiff's daily life,

10 including his ability to drive, perform daily chores at the facility where he lives, and read. Therefore,

11 the ALJ considered Plaintiff's visual acuity and his symptom of teariness in the Fourth Step of his

12 analysis. The ALJ did not include Plaintiff's symptom of blurry vision in the RFC determination

13 because he found that it caused Plaintiff no functional limitation. (AR 11.) However, to the extent

14 that this determination was predicated on an insufficient analysis of the medical evidence, the Court

15 cannot affirm the ALJ's decision.

16 **B.    Analysis of Medical Evidence**

17      Plaintiff claims that Dr. Grossman's RFC assessment was based solely on the report of Dr.

18 Dozier and was, therefore, an insubstantial basis for the ALJ's decision. Plaintiff also asserts that

19 the ALJ improperly discounted the opinion of Dr. Williams without providing specific and legitimate

20 reasons supported by substantial evidence in the record.

21      The ALJ gave two reasons for giving less weight to the opinion of Dr. Williams. The first

22 was that Dr. Williams only saw Plaintiff once. (AR 11.) Plaintiff disputes that this is a legitimate

23 reason, asserting that the ALJ accepted the medical opinion of Dr. Grossman, who was not a

24 specialist and never actually evaluated Plaintiff, rather than a specialist who examined him. The

25 ALJ's second reason for ascribing little weight to the opinion of Dr. Williams was that his opinion

26 was offered prior to subsequent surgeries. (AR 11.) Plaintiff disputes that this is a legitimate reason

27 because Plaintiff still experiences symptoms indicating that subsequent surgeries have not resolved

28 Plaintiff's condition.

1        **1.      Legal Standard**

2        The medical opinions of three types of medical sources are recognized in Social Security

3   cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat

4   the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-

5   examining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, a treating

6   physician's opinion should be given more weight than opinions of doctors who did not treat the

7   claimant, and an examining physician's opinion is entitled to greater weight than a non-examining

8   physician's opinion.  *Id.*  Where a treating or examining physician's opinion is uncontradicted by

9   another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the

10  treating physician's ultimate conclusions.  *Lester,* 81 F.3d at 830.  If the treating or examining

11  doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific

12  and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by

13  substantial evidence in the record.  *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574

14  F.3d 685, 692 (9th Cir. 2009).  Additionally, greater weight is typically assigned to the opinion of

15  a specialist with regard to medical issues which relate to the area of his or her specialty than is given

16  to the medical opinion of someone who is not a specialist.   20 C.F.R. §§ 404.1527(d)(5),

17  416.927(d)(5).

18       **2.      Dr. Grossman's RFC Assessment**

19       The ALJ gave substantial weight to the opinions of both Dr. Dozier, an examining physician,

20  and Dr. Grossman, a non-examining physician, as being most consistent with the overall objective

21  medical evidence.

22       Plaintiff claims that Dr. Grossman's RFC assessment was based solely on the report of Dr.

23  Dozier and was, therefore, an insubstantial basis for the ALJ's decision.  Dr. Grossman's report

24  contains indications that it is not merely a blind adoption of Dr. Dozier's report.  For example, Dr.

25  Grossman disagreed with Dr. Dozier regarding the possible cause of Plaintiff's hip pain. (AR 181.)

26   However, it is significant that Dr. Grossman's RFC assessment makes no mention of Plaintiff's

27  symptom of tearing which is well evidenced in the medical record.  (AR 146-173, 177, 238, 352.)

28  Because Plaintiff's teariness is the alleged cause of his blurry vision, Dr. Grossman's failure to

account for the teariness symptom, despite ample evidence of teariness in the medical record, calls into question his determination that Plaintiff has no eye limitations. The vocational expert testified that frequent blurry vision could change Plaintiff's ability to perform his past relevant work. Immediately prior to rejecting Dr. Williams' opinion, the ALJ noted that Dr. Grossman "did not impose any eye limitations in [his] residual functional capacity assessment." (AR 11.) Clearly, Dr. Grossman's assessment is not consistent with the medical record as a whole with respect to Plaintiff's symptom of teariness. *See Howard v. Heckler,* 782 F.2d 1484, 1487 (9th Cir. 1986) ("In assessing whether a finding is supported by substantial evidence, we must consider the record as a whole.").

To the extent that the ALJ relied on Dr. Grossman's determination that there was no visual limitation to discount the opinion of Dr. Williams, the weight assigned to Dr. Grossman's opinion should be reconsidered because substantial medical evidence does not support it.

### 3.     The ALJ's Rejection of Dr. Williams' Medical Opinion

The ALJ did not provide specific and legitimate reasons for discounting Dr. Williams' opinion. The ALJ concluded that Dr. Williams' opinion should be given less weight because he only examined Plaintiff once. The number of times a physician has examined a claimant is only a factor in determining the extent of a <u>treating</u> relationship, not an <u>examining</u> relationship. *Compare* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) *with* 20 C.F.R. §§ 404.1527(d)(2)-(2)(i), 416.927(d)(2)-(2)(i) (listing the frequency of examination as a factor only in a treatment relationship, not in an examining relationship). This is so because, generally, an examining physician only examines a claimant once. The suggestion that an opinion is inadequate simply because it resulted from a one-time examination leads to the conclusion that all examining physician opinions should be discarded. *See Henderson v. Astrue*, 634 F. Supp. 2d 1182, 1192 (E.D. Wash. 2009) (finding ALJ's conclusion that medical opinions based on one-time examination should be rejected was erroneous as violative of regulation and case law).

Here, Dr. Williams is not a treating physician such that the ALJ was required to evaluate the extent of his treating relationship with Plaintiff. Further, Dr. Williams' opinion is not being directly compared to that of another treating physician. Therefore, the number of times Dr. Williams has

11

examined Plaintiff is not relevant.  Moreover, of the physicians' opinions given weight by the ALJ, Dr. Dozier also only examined Plaintiff once, and Dr. Grossman never examined him at all.  Thus, rejecting Dr. Williams' opinion for this reason is incongruent.

The ALJ also discounted Dr. Williams' opinion that further surgeries will not benefit Plaintiff in alleviating his eye-tearing symptom.  The ALJ asserted that Dr. Williams' opinion  is entitled to less weight because it was offered prior to subsequent surgeries. (AR 11.)  After Dr. Williams examined Plaintiff and rendered his opinion, Plaintiff underwent three additional eyelid surgeries. These surgeries were performed by a treating specialist, Dr. Kohn.  Medical records provided by Dr. Kohn indicate that additional surgeries may still be necessary, but do not explain how the surgeries thus far have affected Plaintiff's symptomatology or his prognosis such that they establish a basis for rejecting Dr. Williams' opinion.  (AR 11, 370-73.)  As the record stands, Dr. Kohn's opinion is ambiguous.  For example, if further surgeries are, in fact, still necessary, it can be inferred that Plaintiff is still experiencing significant teariness and that the surgeries to date have not meaningfully changed his symptomatology.  If future surgeries are not necessary, it could mean that (1) Plaintiff is no longer experiencing significant symptoms, inconsistent with Dr. Williams' opinion, or (2) Plaintiff's condition is permanent, and further surgeries will not benefit in alleviating Plaintiff's symptoms, consistent with Dr. Williams' opinion.

Because of this ambiguity, the medical records from Dr. Kohn do not necessarily support a rejection of Dr. Williams' opinion.  Without clarification by the ALJ or additional medical evidence, the Court cannot conclude that this is a legitimate reason to reject Dr. Williams' opinion.  The ALJ is responsible for resolving conflicting or ambiguous testimony. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The ALJ can meet his burden to show specific and legitimate reasons for discounting a physician's medical opinion by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Here, the ALJ has properly set out the relevant facts and has made findings, but he has not clearly stated his interpretation of the evidence indicating why subsequent

1  surgeries have made Dr. Williams' opinion less credible.  Therefore, discounting the opinion of Dr.

2  Williams because his opinion was offered prior to subsequent surgeries is not a specific and

3  legitimate reason for giving less weight to Dr. Williams' testimony.

4       Finally, Plaintiff claims the ALJ did not account for Dr. Williams' specialty when weighing

5  his opinion.  Although a doctor's specialty is an important factor in assigning weight to a medical

6  opinion, the ALJ gives no indication that he considered Dr. Williams' specialty in coming to his

7  determination.  Plaintiff claims that Dr. Williams is an ophthalmologist.[7]  The Commissioner

8  believes Dr. Williams is an optometrist.[8]  The record clearly indicates that Dr. Williams is a Doctor

9  of Optometry and is, therefore, an optometrist.  (AR 238.)  However, even licensed optometrists

10  are considered acceptable medical sources to provide evidence establishing visual disorders.

11  20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).  An ALJ will "generally give more weight to the

12  opinion of a specialist about medical issues related to his or her area of specialty than to the opinion

13  of a source who is not a specialist." *Id.* §§ 404.1527(d)(5), 416.927(d)(5).  Dr. Dozier's specialty

14  is internal medicine.  To the extent that Dr. Williams' specialty as an optometrist may allow him

15  to have a better understanding of how Plaintiff's eye impairment would affect his ability to see, on

16  remand, the ALJ should explain how each physician's specialty factors into his decision regarding

17  the weight assigned to the physicians' opinions.

18  **C.**    **Remand Is Required**

19       The ALJ did not provide specific and legitimate reasons based on substantial evidence in

20  the record to discount the opinion of Dr. Williams.  "Where the Commissioner fails to provide

21  adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits]

22  that opinion as 'a matter of law.'" *Lester*, 81 F.3d at 830-34 (finding that, if doctors' opinions and

23  Plaintiff's testimony were credited as true, plaintiff's condition met a listing (quoting *Hammock v.*

24  *Bowen*, 879 F.2d 498, 502 (9th Cir. 1989))).  Crediting an opinion as a matter of law is appropriate

25

26

27  [7] An ophthalmologist is "a physician who specializes in the diagnosis and medical and surgical treatment of diseases and defects of the eye and related structures." *Dorland's, supra* note 2, at 1349.

28  [8] An optometrist is "a healthcare provider who examines, diagnoses, treats, and manages diseases and disorders of the visual system, the eye, and associated structures, as well as diagnosing related systemic conditions." *Id.* at 1352.

1   when, taking that opinion as true, the evidence supports a finding of disability. *See Smolen v.*

2   *Chater*, 80 F.3d at 1292.

3        Courts retain flexibility, however, in applying this crediting-as-true theory. *Connett v.*

4   *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there

5   were insufficient findings as to whether Plaintiff's testimony should be credited as true). "In some

6   cases, automatic reversal would bestow a benefits windfall upon an undeserving, able claimant."

7   *Barbato v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) (remanding for

8   further proceedings where the ALJ made a good-faith error in that some of his stated reasons for

9   rejecting a physician's opinion were legally insufficient).

10        Here, the ALJ did not neglect to state the reasons for the weight given to the medical

11   opinions in this case.  Rather, the ALJ erred because the stated reasons are legally insufficient.

12   "Such good faith errors inevitably will occur.  Reasonable judicial minds sometimes will disagree

13   regarding proper application of the rather imprecise standard of 'specific, legitimate' reasons."

14   *Barbato*, 923 F. Supp. at 1278.  "[U]nder the rule in *Lester*, the [medical] opinion will trigger

15   benefits whenever the ALJ's previously stated reasons for rejecting the opinion fall short of the ill-

16   defined 'specific, legitimate' standard." *Id*. (footnote omitted).  "A reviewing court should have

17   discretion to avoid this inequitable result by remanding the case for further administrative

18   proceedings.  Remand necessitates delay, but the cost of this delay should be balanced against the

19   risk of an erroneous determination." *Id*.; *see also McAllister v. Sullivan,* 888 F.2d 599, 603 (9th Cir.

20   1989) (remanding for further proceedings because the Secretary of Health and Human Services was

21   in a better position than the court to point to evidence in the record to provide specific, legitimate

22   reasons to disregard treating physician's opinion).  Accordingly, the court exercises its discretion

23   to remand this case to the Commissioner for further proceedings. *See McAllister*, 888 F.2d at 603

24   (holding that court may remand to allow ALJ to provide the requisite specific and legitimate reasons

25   for disregarding medical opinions).

26        On remand, the ALJ should provide specific and legitimate reasons for discounting the

27   opinions of any controverted physician opinions.  In making the determination of the amount of

28   weight to assign a physician's opinion, consideration should be given to the physician's specialty.

Furthermore, the ALJ should resolve any ambiguity in the medical evidence, particularly with regard to the question of whether subsequent surgeries have resolved Plaintiff's symptom of teariness.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED, and the case is REMANDED to the ALJ for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Jon J. Sprout and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:     January 27, 2011**                         /s/ Sheila K. Oberto
                                                                    UNITED STATES MAGISTRATE JUDGE